UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,       )<br>                                                      )<br>         Plaintiff,                             )<br>                                                      )<br>v.                                                  )<br>                                                      )<br>BRYANT HOLMAN,                      )<br>                                                      )<br>         Defendant.                          )<br>                                                      ) | NO. 5:17-CR-00087-KKC-MAS |

*** *** *** ***

## REPORT AND RECOMMENDATION

The Court, on referral from Judge Caldwell, considers reported violations of supervised release conditions by Defendant Bryant Holman ("Holman"). Considering the record, proffer, and counsels' arguments at the final revocation hearing, the Court recommends that the District Judge revoke Holman's term of supervised release, sentence him to a term of imprisonment of time served, with forty-eight months' supervised release to follow. The Court further recommends that Judge Caldwell impose, as an additional condition of Holman's new supervision term, mandatory outpatient substance use treatment for the first twelve months of his supervision term.

### I.       BACKGROUND

On February 28, 2018, Judge Caldwell sentenced Holman to a 60-month term of imprisonment followed by a 5-year term of supervised release upon his plea of guilty to the charges of conspiracy to distribute 28 or more grams of cocaine base in violation of 21 U.S.C. § 846 and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [DE 23]. Holman's

Guidelines range was 70 to 87 months, based on a total offense level of 23 and a criminal history category IV.

Holman's term of supervision began on February 3, 2021. A little over one year later, the United States Probation Office ("USPO") reported that on March 31, 2022, Holman submitted to a urine screen which tested positive for cocaine via an instant testing device. At that time, Holman denied use. The presence of cocaine in the urine sample was ultimately confirmed by Alere Toxicology laboratory on April 6, 2022. Confronted with this information on April 7, 2022, Holman admitted to using cocaine. On April 8, 2022, USPO reported two violations of mandatory conditions to the Court: first, that Holman unlawfully used a controlled substance, and second, that by so doing, he necessarily violated federal law prohibiting possession of a controlled substance. USPO requested a summons for Holman to answer for his alleged violations, which the Court granted.

Holman appeared before Judge Caldwell on April 26, 2022, for a final hearing on the two above violations. [DE 36]. By agreement of the parties, Judge Caldwell agreed to continue the hearing until August 23, 2022, and modified Holman's supervision to include more frequent drug screenings and contact with USPO. Judge Caldwell instructed the parties that if there were no further violations between April and August, she would cancel the final hearing and dismiss the violations. [DE 36].

Despite this leniency from the Court, USPO reported additional violations in and addendum on May 11, 2022. Those violations alleged that on May 4, 2022, Holman submitted to a urine screen which the lab returned as diluted, a violation of his special condition that he refrain from tampering with or obstructing the drug screenings. The addendum further alleged that Holman had a positive drug screen on May 10, 2022, and subsequently admitted to using cocaine

on May 7, 2022, and Percocet (for which he does not have a prescription) on May 6, 2022, a violation of his mandatory condition not to commit any violations of law. The Court issued an arrest warrant on May 12, 2022, however, Holman was not arrested until October 23, 2022. [DE 42].[1]

On October 25, 2022, the Court conducted an initial appearance, pursuant to Federal Rule of Criminal Procedure 32.1, on the supervised release violations as alleged in the Violation Report and Addendum. [DE 43]. The Court advised Holman of his constitutional rights, including his right to a preliminary hearing pursuant to Fed. R. Crim. P. 32.1(b)(1)(A). Holman knowingly, voluntarily, and intelligently waived his right to a preliminary hearing and the Court found probable cause to conclude that the alleged violations had occurred. Holman did not contest his detention pending the final hearing.

The parties agreed that Holman's violations of federal law (by possessing cocaine and Percocet) are a Grade B violations. "Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." United States Sentencing Guidelines "Guidelines") § 7B1.2(b). The Court thus utilizes Grade B for Guidelines determination purposes in this case. The parties further agreed that based on Holman's criminal history category IV, the Guidelines range upon revocation is 12 to 18 months' imprisonment, with a statutory maximum of 60 months, and there is no maximum amount of supervision that can be imposed upon revocation. *See* 18 U.S.C. § 3583(e)(3) and 18 U.S.C. § 3583(h).

---

[1] There was a dispute at the final hearing as to whether Holman had been actively evading arrest between May and October. The United States did not present any evidence that Holman had been dodging service of the arrest warrant. Holman ultimately turned himself in immediately after being contacted by a deputy sheriff.

## II. ANALYSIS

At the final hearing, Holman urged the Court not to revoke his supervision, but rather allow him to continue on supervised release with modified conditions of inpatient or outpatient substance use treatment. The United States did not advocate for a specific sentence but argued that revocation with some term of imprisonment was appropriate considering Holman abused the Court's trust by immediately using cocaine and Percocet following his appearance before Judge Caldwell. The United States argued that this conduct did not evince respect for the law, and that revocation was imperative to punish that disrespect. The United States conceded that there may be some "combination of in[patient] treatment or other aspects" that could be an appropriate sanction but maintained that the statute requires revocation in this circumstance. [DE 45, Recording at 16:38 – 18:08].

The Court has evaluated the entire record and considered the arguments presented at the final hearing, the record concerning Holman's violations, the presentence investigation report, and the factors set forth in 18 U.S.C. § 3583(e). As required by statute and urged by the Guidelines, the Court recommends that Judge Caldwell revoke Holman's current term of supervised release as a sanction for the admitted violation conduct. *See* USSG § 7B1.3(a)(1); 18 U.S.C. § 3583(g). Revocation is also an appropriate consequence for Holman's abuse of the Court's trust. *See* USSG § 7, Pt. A. intro. comment 3(b) (observing that "revocation . . . should sanction primarily the defendant's breach of trust"). However, for the reasons discussed below, the Court recommends a revocation sentence of time served, which is significantly below the recommended Guidelines range.

In recommending a specific sentence or consequence upon revocation, the Court carefully considers the statutory factors in § 3553(a), as incorporated in § 3583(e), including the applicable

4

Guidelines range. *See generally United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011). The Court's overarching approach is shaped by Congress's and the Sentencing Commission's policy statements concerning supervised release and revocation generally. 18 U.S.C. § 3553(a)(5). "Supervised release is essentially rehabilitative and is not intended for punishment." United States v. Lewis, 498 F.3d 393, 397 (6th Cir. 2007). "The congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty." *Johnson v. United States*, 529 U.S. 694, 708–09 (2000) (discussing legislative history); see also USSG § 7, Pt. A. intro. comment 4 ("[T]he Commission determined that the purpose of . . . supervised release should focus on the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct.").

Although a sentence of imprisonment upon revocation may serve certain statutory and other purposes, it does not further the specific goal of rehabilitation. *See United States v. Deen*, 706 F.3d 760, 768 (6th Cir. 2013) (holding that the prospect of rehabilitative benefits cannot support a sentence of imprisonment upon revocation and, in dicta, framing the revocation sentencing inquiry foundationally as "how best to encourage the rehabilitation of a defendant before it"). These principles are consistent with Congress's choice to expressly except the § 3553(a)(2)(A) factors—"the need[s] . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"—from the revocation sentencing calculus, with respect either to incarceration or to any reimposed supervision term. 18 U.S.C. § 3583(e); *see also U.S. Sentencing Commission Primer: Supervised Release*, United States Department of Justice (Mar. 2020), at n.17 ("The legislative history indicates that section 3553(a)(2)(A) was not included for consideration under [§ 3583(e)] because the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather

5

than punish them."). The Court concludes that revocation with a short term of incarceration best balances the statutory factors within the broader policy framework under the circumstances of this case.

The Court begins with the nature and circumstances of the offense, and the history and characteristics of Holman. 18 U.S.C. § 3553(a)(1). The relevant offense in this context is the original offense of conviction, conspiracy to distribute 28 grams or more of cocaine base and being a felon in possession of a firearm, rather than the violation conduct. *See United States v. Matute-Argueta*, 817 F. App'x 152, 154 n.1 (6th Cir. 2020); *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011). Holman's underlying trafficking offense was his second; he was under state parole for the first offense when he committed the federal offense. [Presentence Investigation Report "PIR" at 8-13]. Because he was on parole at the time of the federal offense, his criminal history was calculated to be a Category IV. Holman's original offense Guidelines range was 70 to 87 months' imprisonment on each count. The District Court sentenced Holman to 60 months' imprisonment on each count to be served concurrently, ten months below the lowest end of his Guidelines range.

Holman has been on supervised release since February 2021 and he did not have any violations until April 2022. In his PIR, Holman acknowledged he was a heavy cannabis user, but denied being a regular user of any other substances. [PIR at 16]. However, at the final hearing, he acknowledged he is an "addict" and has struggled with substance use for a long period of time. He does have three prior drug or alcohol related convictions in his criminal history, as well as a history of drug treatment as a condition of his state parole. [PIR at 8-16]. Additionally, Holman appears to have been unable to control his substance use in early May 2022, even though he was aware USPO would be testing him regularly and that Judge Caldwell had given him a second

6

chance to comply with the terms of his supervision rather than face revocation. The United States' point that this was an abuse of the Court's trust and the opportunity afforded to him is well-taken; the Court cautions Holman that additional violations of his conditions of supervision will likely not result in such leniency.

Holman proffered that both he and the community would benefit much more from Holman attending substance use treatment than a term of imprisonment. The Court agrees. Holman is a father of two and expecting a third child. He has strong employment history and expressed a desire to continue working so that he could financially support his children. Long-term outpatient treatment will provide Holman with an opportunity to learn how to manage his substance use while being a working, productive member of society. 18 U.S.C. § 3553(a)(2)(d) (The Court must consider "the need for the sentence imposed . . . "to provide the defendant with needed . . . medical care or other correctional treatment in the most effective manner."). In contrast, a term of imprisonment will serve as a short-term solution to remove Holman's access to drugs, but will not provide him with any tools to manage his issues when he is released, potentially setting him up for a relapse.

Holman allocated to the Court, expressing regret for his actions, took responsibility, and acknowledged of the seriousness of violating his supervised release conditions. The threat of incarceration, particularly with the impending birth of his third child, appears to be a significant deterrent to Holman. *See* 18 U.S.C. § 3553(a)(2)(B). He stated he wished to stop using narcotics and fully comply with his conditions of supervision, but needs the appropriate tools (i.e., substance use counseling) to be able to do so. The broader deterrence purposes of revocation would not be served by a prison sentence that is within the Guidelines range. Rather, providing Holman with

ways to manage his substance use issues will hopefully be more effective in rehabilitating him than many months in prison.

Finally, there is no indication that the community needs to be protected from any future crimes Holman may commit, or that he poses any danger other than the general danger that drug use poses to society. *See* 18 U.S.C. § 3553(a)(2)(C). Holman is not engaging in trafficking, violence, or other dangerous activities (such as driving under the influence) that would increase the severity of these violations. A term of imprisonment at the lowest end of the Guidelines range is still too high for the conduct at issue here when weighed against Holman's otherwise satisfactory performance on supervision for more than a year.

To this end, the Court recommends that Judge Caldwell revoke Holman's term of supervision and sentence him to time served. As of the date of this Report and Recommendation, Holman has been in custody for 25 days. By the time the objection period expires and Judge Caldwell rules on this Report and Recommendation, Holman will have been in custody six weeks or more. Although this is substantially below the Guidelines range of 12 to 18 months, the Court views a significant variance from the Guidelines imprisonment range as appropriate and justified in this particular case. *See United States v. Burrell*, 455 F. App'x 667, 669 (6th Cir. 2012) (requiring a "sufficiently compelling [justification] to support the degree of the variance" in the supervised release revocation context). Though the Guidelines draw the Court toward the advisory range, the balance of circumstances and factors and the availability of other, more effective revocation sentencing tools in this specific context pull the Court toward the recommended consequences. The Court has carefully considered the recommended imprisonment range, its policy rationale, and the application of that rationale in this case. 18 U.S.C. § 3553(a)(4)(B). Considering the violations at issue, Holman's desire to reform, and the potential utility of

8

outpatient treatment in this case, this sentence will be sufficient but not "greater than necessary to satisfy the goals set forth in 18 U.S.C. § 3553(a) as they apply to [this] particular defendant." *United States v. Eubanks*, 516 F. App'x 576, 579 (6th Cir. 2013).

### III.   CONCLUSION

Accordingly, for the reasons stated herein, the Court **RECOMMENDS** that:

(1) Holman be found guilty of all violations per his stipulation;

(2) Holman's current term of supervised release be **REVOKED**;

(3) Holman be sentenced to an incarceration period of **TIME SERVED**; and

(4) Holman serve a reimposed **forty-eight month term** of supervised release to follow, subject to the following additional conditions of supervision:

　　a. Holman shall be required to participate in outpatient substance use treatment or counseling for the first 12 months of his reimposed term of supervision. The specifics of the treatment or counseling shall be arranged at the discretion of USPO.

Holman preserved his right of allocution. Absent a waiver of allocution, this matter will be placed on Judge Caldwell's docket for an allocution hearing upon submission. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

9

Entered this 17th day of November, 2022.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY